**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**April 19, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

COURTNEY BROOKE MOON,

    Plaintiff - Appellant,

v.

OKLAHOMA DEPARTMENT OF
CORRECTIONS, Lexington,

    Defendant - Appellee.

No. 23-6091
(D.C. No. 5:22-CV-00103-PRW)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT*
_____

Before **TYMKOVICH**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.
_____

Courtney Brooke Moon appeals the district court's order granting summary

judgment for the Oklahoma Department of Corrections (ODOC) on her claim for

hostile work environment sexual harassment under Title VII of the Civil Rights Act.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

\* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

I

The district court found these undisputed facts on summary judgment. *See* Aplt. App., vol. II at 473-76. Ms. Moon worked as a case manager at the ODOC's Lexington Assessment and Reception Center (Lexington). She started in that role in June 2017 and was promoted to Case Manager III in October 2017—a position she held until she resigned in September 2020.

Not long after Ms. Moon began working at Lexington, she met Shaun Tabon, a fellow Case Manager III. As the district court explained and the parties do not dispute, Ms. Moon and Mr. Tabon "soon became engaged in conduct that was sexual in nature." *Id*. at 474. This conduct included exchanging "numerous messages via Facebook Messenger, many of which contained sexual references." *Id*. They also frequently interacted at work, spending time by themselves or with others on smoke breaks. On several occasions, these instances "resulted in physical touching that was also sexual in nature." *Id*. This conduct continued well into 2020. While the parties acknowledge the sexual nature of their interactions, they dispute whether these interactions were consensual. Mr. Tabon, for his part, claimed their interactions were consensual; however, Ms. Moon claims Mr. Tabon's behavior was unwelcome and constituted sexual harassment. Ms. Moon acknowledged that she received copies of the ODOC's policies and procedures for reporting sexual harassment but never used them to report the alleged misconduct.

On September 4, 2020, Ms. Moon sent a two-page email to one of her supervisors, Jason Bryant, asking to meet with him. Some of Ms. Moon's case files

had been reassigned to her co-workers, and she was concerned that during a staff meeting her supervisors had falsely suggested to her colleagues that she had fallen behind in her work due to excessive absences, when in fact her time off had been approved. Ms. Moon's email did not mention Mr. Tabon or sexual harassment.

Mr. Bryant and another supervisor, Travis Gray, then met with Ms. Moon on Friday, September 11, 2020. According to Messrs. Bryant and Gray, Ms. Moon never mentioned sexual harassment or Mr. Tabon. But Ms. Moon testified at her deposition that she reported the alleged harassment during the September 11 meeting. She also maintained that later that same day, Mr. Tabon came into her office, stuck his hands down the front of her blouse, and rubbed her breasts.

The next business day—Monday, September 14—Ms. Moon resigned from her position at Lexington. Her resignation letter did not mention Mr. Tabon or sexual harassment. The ODOC says that it first learned of the alleged sexual harassment when Ms. Moon filed suit a year and a half after she voluntarily resigned.

The ODOC moved for summary judgment on Ms. Moon's claim for hostile work environment sexual harassment because she failed to create a genuine issue of material fact on the elements of the claim. The ODOC maintained that because Mr. Tabon was not a supervisor, Ms. Moon was required to create a genuine dispute that the ODOC was on notice of the alleged harassment and failed to stop it. Specifically, it argued that Ms. Moon's uncorroborated, self-serving deposition testimony that she notified Bryant and Gray on September 11, failed to create a genuine dispute of fact. Alternatively, the ODOC argued that it was entitled to

3

summary judgment because it took reasonable steps to avoid a hostile workplace by adopting policies to report harassment and Ms. Moon failed to take advantage of the policies, i.e., the *Ellerth/Faragher* defense.

For her part, Ms. Moon argued that there was a genuine dispute whether Mr. Tabon was her supervisor, which means the ODOC was vicariously liable for his misconduct. But even if Mr. Tabon was not her supervisor, Ms. Moon maintained that her deposition testimony alone was sufficient to create a genuine issue of material fact whether she notified the ODOC of the alleged harassment on September 11. She had an opportunity to but did not address the *Ellerth/Faragher* defense.

The district court granted summary judgment to the ODOC. According to the district court, Mr. Tabon was not Ms. Moon's supervisor, and her "own self-serving uncorroborated [deposition testimony that she reported the harassment on September 11] is insufficient to create a genuine dispute on a material fact," namely, whether under a negligence theory of liability the ODOC knew about the harassment and failed to act. *Id*. at 482. As a result, the court did not consider the *Ellerth/Faragher* defense.

Ms. Moon timely appealed. As we will explain, we affirm but for a different reason—the ODOC's *Ellerth/Faragher* defense bars Ms. Moon's claim. *See Safe Streets All.* v. *Hickenlooper*, 859 F.3d 865, 879 (10th Cir. 2017) (We "can affirm a lower court's ruling on any grounds adequately supported by the record, even grounds not relied upon by the district court." (quoting *Elwell* v. *Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012))).

II

"We review the district court's grant of summary judgment de novo, applying the same standard used by the district court." *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If a reasonable jury could return a verdict for the nonmoving party, summary judgment is inappropriate." *Riser*, 776 F.3d at 1195 (internal quotation marks omitted). "[W]e view all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." *Id*. (brackets and internal quotation marks omitted).

A court's job in ruling on a motion for summary judgment is not to weigh the evidence, make credibility determinations, or draw inferences from the facts; rather, the court determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. If a court finds there are genuine and material factual disputes, these issues should be resolved by the fact finder, and summary judgment is precluded. *Id*. at 248.

"We have discretion to affirm on any ground adequately supported by the record." *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). In exercising our discretion, "we consider whether the ground was fully briefed and argued here and

below; whether the parties have had a fair opportunity to develop the factual record; and whether, in light of the factual findings to which we defer or uncontested facts, our decision would involve only questions of law." *Id*. (brackets, citations, and internal quotation marks omitted).

### III

It is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Hostile work environment sexual harassment is a form of discrimination actionable under Title VII. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987). "Under Title VII, harassment is actionable only when it is sufficiently severe or pervasive such that a reasonable person would find the work environment to be hostile or abusive *and* the employee in fact perceived it to be so." *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013) (internal quotation marks omitted).

"In general, an employer is directly liable for an employee's unlawful harassment if the employer was negligent with respect to the offensive behavior." *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 737 (10th Cir. 2014) (internal quotation marks omitted). To demonstrate negligence, "an employee must present enough evidence for a reasonable jury to find that the employer knew or should have known about the harassment but failed to stop it." *Debord*, 737 F.3d at 650.

However, "[if] the harasser is a supervisor rather than merely a co-worker . . . the employer may be vicariously liable for the conduct, depending on the circumstances. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable for sex discrimination, with no defense." *Kramer*, 743 F.3d at 737 (citation and internal quotation marks omitted). But even "[i]f no tangible employment action occurs, the employer may still be vicariously liable for the supervisor's harassment if the plaintiff proves the harassment was severe or pervasive *and* the employer is unable to establish the affirmative defense announced in" *Burlington Industries., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). *Kramer*, 743 F.3d at 737 (citation omitted) (emphasis added).

The *Ellerth/Faragher* "defense has two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. at 745 (internal quotation marks omitted). "An employer acts reasonably as a matter of law to prevent sexual harassment if it adopted valid sexual harassment policies and distributed those policies to employees . . . ." *Debord*, 737 F.3d at 653; *see also Helm v. Kansas*, 656 F.3d 1277, 1289 (10th Cir. 2011) (holding that an employer "exercised reasonable care to prevent sexual harassment by promulgating an appropriate sexual harassment policy, distributing that policy to all employees . . . requiring employees to acknowledge in writing their understanding of

the policies . . . and providing training to managers"). But "an employer's mere promulgation and dissemination of an adequate harassment policy does not, by itself, establish that the employer acted reasonably to remedy any harassment that occurred." *Helm*, 656 F.3d at 1290. Rather, the employer must also take prompt, proper action to correct harassment if it occurs. *See id*.

An employer may satisfy the second element of the defense "by showing that the victimized employee unreasonably delayed in reporting incidents of sexual harassment." *Debord*, 737 F.3d at 654 (internal quotation marks omitted). We have recognized that "raising problems regarding sexual harassment can be uncomfortable for the employee, but if we were to allow an employee's subjective, ungrounded fears of unpleasantness or retaliation to alleviate an employee's reporting requirement, we would completely undermine Title VII's basic policy of encouraging forethought by employers *and* saving action by objecting employees." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1063 (10th Cir. 2009) (internal quotation marks omitted).

The employer "bears the burden to prove both prongs of the defense by a preponderance of the evidence." *Kramer*, 743 F.3d at 746. "Thus, the employer must prove both it *acted* reasonably in preventing and correcting harassment and that the victimized employee unreasonably *failed* to act by not utilizing complaint opportunities." *Id*. (internal quotation marks omitted).

"To win summary judgment on the [*Ellerth/Faragher*] defense, an employer must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Id*. (ellipsis and internal quotation marks

8

omitted).  This means that the employer must demonstrate the lack of any disputed material fact and that no reasonable jury could decide that the employer failed to act reasonably or that it was reasonable for the victimized employee not to follow the protocol and report the alleged harassment.  *See id*.

IV

Ms. Moon urges reversal on three grounds.  *First,* she argues Mr. Tabon was her supervisor—not a co-worker—and the district court erroneously concluded otherwise.  Because Mr. Tabon was her supervisor, Ms. Moon contends, the ODOC could be liable under a theory of vicarious liability, and there were genuine issues of material fact, namely whether a reasonable jury could find that the ODOC failed to take any corrective measures after she reported the harassment.  *Second*, Ms. Moon contends that even if the district court correctly determined Mr. Tabon was a co-worker, summary judgment was improper under a negligence theory of liability.  According to Ms. Moon, she presented enough evidence for a reasonable jury to find the ODOC knew about the alleged harassment but failed to act.  *Third*, she maintains the district court erroneously considered declarations that failed to conform to the requirements of Oklahoma law because (1) they were not signed under penalty of perjury; (2) did not set forth the place of execution; and (3) did not state they were being made under Oklahoma law.

While we acknowledge Ms. Moon's appellate challenges, we need not decide most of them to resolve this appeal.  Even assuming Mr. Tabon was Ms. Moon's supervisor (for Title VII purposes), or the alleged harassment was of a sufficient

9

degree to be actionable under Title VII, affirmance is required because the ODOC established its entitlement to the *Ellerth/Faragher* defense. We exercise our discretion to affirm on this alternative ground because (1) it was fully briefed and argued both on appeal and in the district court; (2) the parties had a fair opportunity to develop the factual record; and (3) in light of the undisputed material facts, our disposition turns only on a question of law. *See Elkins*, 392 F.3d at 1162.

The record before us demonstrates that the ODOC met both prongs of the *Ellerth/Faragher* defense. With respect to the first prong, it is undisputed that the ODOC adopted and provided sexual harassment policies to Ms. Moon that included procedures for reporting harassment. Nonetheless, she contends there was a genuine issue of material fact whether the ODOC failed to take prompt corrective action. Assuming that Ms. Moon put the ODOC on notice during the September 11, 2020, meeting, it did not have an opportunity to take corrective action before she resigned the next business day.

Regarding the second prong, the undisputed evidence shows that Ms. Moon failed to take advantage of preventative measures. Although she asserts that she took advantage of the preventative measures when she allegedly reported the harassment on September 11, this does not demonstrate a genuine issue whether this was a *reasonable* invocation of the ODOC's procedures. The only evidence she presented on the second prong was her deposition testimony where she stated she delayed reporting the harassment for several years because she feared losing her job. *See* Aplt. App., vol. II at 423. However, this court has considered and rejected the

10

argument that it is reasonable for an employee to delay reporting sexual harassment for even a few months—let alone years—due to concerns over possible retaliation. *See Pinkerton*, 563 F.3d at 1063-64.

Still, Ms. Moon argues there was a genuine issue of fact whether the ODOC met the first prong of the *Ellerth/Faragher* defense because "no corrective action [was] taken." Aplt. Reply Br. at 10. If the ODOC never had notice of the alleged harassment, there would be nothing to correct. But even if we assume there is a genuine factual issue whether Ms. Moon's notice provided notice to Bryant and Gray on September 11, 2020, no reasonable jury could decide that the ODOC failed to act reasonably under the circumstances.

*First*, Messrs. Bryant and Gray were not required to launch an investigation from the moment Ms. Moon mentioned sexual harassment, as she seems to contend. Instead, "in order to establish that it took proper action to correct harassment, [the ODOC] was required to show that it acted *reasonably promptly* on [Ms. Moon's] complaint when it was given proper notice of her allegations." *Helm*, 656 F.3d at 1290 (internal quotation marks omitted) (emphasis added). But because Ms. Moon submitted her letter of resignation just one working day after the meeting, the ODOC did not have an opportunity to take any corrective action.

*Second*, we are unpersuaded by Ms. Moon's argument that the ODOC should have acted immediately to remove Mr. Tabon as her supervisor, which she argues might have prevented the alleged misconduct. "In certain circumstances, an employer's failure to remove a supervisor from close working proximity with a

subordinate who has alleged sexual harassment against the supervisor might be seen as unreasonable." *Pinkerton*, 563 F.3d at 1062.  However, Ms. Moon cites no authority for the proposition that an employer categorically violates Title VII by failing to immediately remove a supervisor from working with the employee based only on an allegation of harassment.

Finally, Ms. Moon insists the district court erred by considering the declarations that allegedly failed to comply with Oklahoma law.  But this argument is waived.  "[A]n appellant waives an argument if she fails to raise it in the district court and has failed to argue for plain error and its application on appeal." *Campbell v. City of Spencer*, 777 F.3d 1073, 1080 (10th Cir. 2014); *see also United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise.").  Here, the record confirms Ms. Moon failed to raise the issue in the district court.  And she has not asked us to review for plain error on appeal, which marks the end of the road for this argument under our precedent.  *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

V

The judgment of the district court is affirmed.

Entered for the Court

Veronica S. Rossman
Circuit Judge

12